UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIMMIE STEPHEN,

    Plaintiff,

v.

DR. REYES; et al.,

    Defendants.

No. C 12-3722 SI (pr)

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

## INTRODUCTION

Jimmie Stephen, an inmate at the San Quentin State Prison, filed a *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A. His several miscellaneous motions also are before the court for consideration.

## DISCUSSION

A. <u>Review of Complaint</u>

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The complaint contains allegations about a variety of conditions at San Quentin and at other prisons at which plaintiff has been housed. Many of the allegations in the complaint do not make sense.[1] Although a reader can discern that plaintiff *wants to* allege claims about medical care, retaliation, law library access, inter-prison transfer, and a lower bunk, the complaint fails to provide a coherent statement of any of those claims. Plaintiff's writing style leaves the writer guessing as to his meaning in many places. Overall, the complaint does not give fair notice of what each defendant is alleged to have done and when he/she did it. The lack of detail prevents the court from determining which claims deserve a response and from whom, and also prevents individual defendants from framing a response to the complaint. Plaintiff must file an amended complaint to correct the following deficiencies.

First, the complaint complains of too many different problems with too many different defendants. Even though the details of the claims cannot be understood, the court can see that the complaint has several defendants that may not be properly joined under Federal Rule of Civil Procedure 20(a). Rule 20(a) provides that all persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." The complaint concerns several different incidents that involve different sets of defendants. For example, plaintiff complains about medical care, a retaliatory transfer and other problems that

---

[1] For example, the first paragraph in the statement of facts is labeled "Inadequate Medical" and alleges: "On 11-21-11 Plaintiff was Willfully Transferred' to San Quentin under 'GUISE' of 'New Level 2 Housing' in cells as Plaintiff was on Solano Warden 'Swarthout' First list for Transfer as Retaliation' for ist Amendment Protected Access to Courts whereas Plaintiff had filed civil rights lawsuit pending against 4 Doctors in CV-10-1678-KJM-KJN Whereas the Selective Medical Board did state one of the 4 Doctors did violate the "BUSINESS AND PROFESSIONAL CODE" AND REQUEST for AN INVESTIGATION IS PENDING.'" Docket # 1, p. 4 (errors and random capitalization in source).

2

occurred while he was at Solano State Prison; the defendants for those claims do not appear to be the same as for his claims about the medical care events and omissions that occurred at San Quentin State Prison. Claims against defendants at Solano State Prison should be pursued in a separate civil rights action filed in the Eastern District of California. Unless he is able to satisfy the joinder requirement for other defendants, plaintiff should limit his amended complaint in this court to claims against defendants at San Quentin State Prison. It is possible that not even all of those defendants are properly joined, but that cannot be determined at this time.

Second, the complaint does not adequately allege a claim about inadequate medical care. When an inmate alleges that his medical care has been constitutionally inadequate, he must allege two things to state a claim: (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). If plaintiff wants to assert a claim for a failure to provide or honor a lower bunk chrono, he needs to assert an objectively serious need for such a chrono, and needs to satisfy the subjective prong of an Eighth Amendment claim by identifying a defendant who responded with deliberate indifference to such a need. Also, for each instance in which medical treatment was denied or delayed, plaintiff must explain what his medical need was and allege facts showing deliberate indifference to it. See *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment). Plaintiff should (a) describe the medical need, (b) identify the date on which the medical treatment was refused or delayed, (c) identify who refused to provide (or delayed) medical treatment, (d) describe how he alerted that person to his need for medical treatment, and (e) state how the refusal to provide (or delay of) medical treatment affected him.

Third, the complaint fails to state a claim for denial of access to the courts. A constitutional right of access to the courts exists, but to establish a claim for any violation of the right of access to the courts, the prisoner must show that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 350-

3

51 (1996). To prove an actual injury, the prisoner must show that the inadequacy hindered him in presenting a non-frivolous claim concerning his conviction or conditions of confinement. *See id.* at 355. Examples of impermissible hindrances include: a prisoner whose complaint was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known about; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the prison's services that he was unable even to file a complaint. *See id.* at 351. Plaintiff has not identified any actual injury, as he must to state a claim for a denial of access to the courts based on a denial of assistance, supplies and law library access. In his amended complaint, plaintiff must cure this deficiency. He also needs to link defendants to this claim, as discussed later in this order.

Fourth, the complaint does not state a claim for retaliation. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). If the retaliation took place at San Quentin, plaintiff can attempt to allege facts showing a violation of his right to be free of retaliation. The factual allegations in the amended complaint must show the existence of all of these elements listed in *Rhodes*.

Fifth, the transfer of plaintiff from one prison to another does not violate his right to due process. Prisoners have no constitutional right to incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *See, e.g., Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (citing *Meachum*, 427 U.S. at 225) (intrastate prison transfer does not implicate Due Process Clause), and *Olim*, 461 U.S. at 244-48 (interstate prison transfer does not implicate Due Process Clause). A non-consensual transfer is not per se violative of either due process or equal protection rights, *see Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Stinson v. Nelson*, 525 F.2d 728, 730 (9th Cir. 1975). "It is well

4

settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002).

Sixth, plaintiff must be certain to link every defendant to every claim on which he seeks to hold him or her liable. In his amended complaint, he should describe what each defendant did (or failed to do) that caused a violation of his constitutional rights so that each proposed defendant has fair notice of his allegedly wrongful conduct. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (liability under § 1983 arises only upon a showing of personal participation by a defendant).

B. <u>Miscellaneous Motions</u>

Plaintiff filed an "order to show cause for . . . [an] injunction [and] . . . a temporary restraining order" (Docket # 3) in which he asks the court to enjoin defendants to stop violating his constitutional rights. Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction or temporary restraining order ("TRO"). Prior to granting a preliminary injunction, notice to the adverse party is required. *See* Fed. R. Civ. P. 65(a)(1). Therefore, a motion for preliminary injunction cannot be decided until the parties to the action are served. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).[2] A TRO may be granted without written or oral notice to the adverse party or that party's attorney only if: (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or the

---

[2]"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). *Winter* did not, however, completely reject the validity of the sliding scale approach to preliminary injunctions. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Under the "sliding scale" approach used in the Ninth Circuit – also dubbed the "serious question" test in *Alliance for Wild Rockies* -- "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. Thus, even after *Winter*, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132 (citations and internal quotation marks omitted).

5

party's attorney can be heard in opposition, and (2) the applicant's attorney certifies in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required. *See* Fed. R. Civ. P. 65(b). The standard for issuing a TRO is similar to that required for a preliminary injunction. *See Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J., dissenting). Plaintiff has not satisfied the substantive standards for a TRO or a preliminary injunction.[3] He has not shown a likelihood of success on the merits, or that he is likely to suffer irreparable harm, or that the balance of equities tips in his favor, or that the public interest favors interim relief here. The motion for a TRO and preliminary injunction therefore is DENIED. (Docket # 3.)

Plaintiff also filed two documents entitled "judicial notice emergency motion for good cause" (Docket # 5, # 6) in which he complains that Dr. Denise Reyes, who apparently is his treating physician at San Quentin, is not licensed to practice medicine in California. Plaintiff attached to his motions print-outs from the Medical Board of California website's "license lookup system" purportedly showing that there was no doctor listed by the name of "Denise Reyes." Setting aside for a moment the fact that this court does not oversee licensing of medical doctors in California, a simple internet search using a search engine uncovers the source of the confusion. Had plaintiff searched her name using a search engine instead of simply searching on the Medical Board's license lookup system, he would have found a Denise Alabart Reyes M.D. listed as practicing in San Quentin and San Rafael. A doctor by the name of Denise Alabart Reyes *is* listed on the Medical Board's "license lookup system." Some women take their spouse's last names when they marry; perhaps Dr. Reyes did. Plaintiff should do more thorough investigations before he sounds the alarm. The motions for good cause are DENIED. (Docket # 5, # 6.)

Plaintiff has requested that counsel be appointed to assist him in this action. A district

---

[3] A preliminary injunction cannot be granted for the separate procedural reason that the opponent has not been served with process and has not received notice. Although a TRO can be granted without advance notice in very limited circumstances, those circumstances are not present in this case.

6

court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Here, exceptional circumstances requiring the appointment of counsel are not evident. The request for appointment of counsel is DENIED. (Docket # 4.)

## CONCLUSION

For the foregoing reasons, the complaint is dismissed with leave to amend. The amended complaint must be filed no later than **November 9, 2012**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa* County, – F.3d —, 2012 WL 3711591 (9th Cir. Aug. 29, 2012) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint by the deadline will result in the dismissal of the action.

IT IS SO ORDERED.

Dated: October 5, 2012

_____
SUSAN ILLSTON
United States District Judge