UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE STEPHEN, | No. C 12-3722 SI (pr) |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT; ADDRESSING PENDING MOTIONS** |
| v. | |
| D. REYES, | |
| Defendant. | |

## INTRODUCTION

In this civil rights action under 42 U.S.C. §1983, Jimmie Stephen complains that defendant Dr. Reyes provided constitutionally inadequate medical care since Stephen arrived at San Quentin State Prison ("SQSP"). For the reasons discussed below, summary judgment will be granted in favor of defendant, and judgment will be entered against plaintiff.

## BACKGROUND

In his amended complaint, Stephen alleged that Dr. Reyes showed a "'reckless disregard'" and "'deliberate indifference'" for his medical needs by "'denial, delayed access'" and "interfer[ence] with doctors [sic] orders.'" Amended Complaint, p. 2. Liberally construed, the Court found Stephen stated a cognizable claim against defendant Reyes for deliberate indifference to his serious medical needs. The Court dismissed all other claims and defendants because either the amended complaint failed to allege sufficient facts to support a claim or the defendants were improperly joined in this action. See Docket no. 19. Defendant Reyes filed a motion for summary judgment, to which Stephen filed opposition and a cross-motion for

summary judgment.

The following facts are undisputed, unless otherwise noted. Stephen arrived at SQSP on November 11, 2011. He saw Dr. Reyes for the first time on December 8, 2011, when he came to the North Block Clinic for a chronic care followup visit. According to her notes from that visit, Dr. Reyes observed that Stephen had a somewhat complicated history regarding his colonic mass and surgical resection.[1] Stephen's most recent surgery, performed at Queen of the Valley Medical Center on August 17, 2011, was a left colectomy for removal of a polyp. Reyes Decl., ¶ 5, Ex. A. Dr. Reyes' review of the pathology report of the removed polyp showed that the polyp was completely excised, with no evidence of infiltrating carcinoma. Id. During his visit with Dr. Reyes, Stephen stated that overall he was doing "okay" since the surgery; his major complaint was some constipation for which he was on a bowel regimen that included Fiber Tabs and lactulose. Id.

The most recent incident requiring medical attention occurred on December 6, 2011, two days prior to his first visit with Dr. Reyes, when Stephen had an episode of dizziness. He was taken to the Triage and Treatment Area where he complained of some dizziness and abdominal cramping. Reyes Decl., ¶ 5, Exhs. A & B. He did not have any chest pain, palpitations or shortness of breath and did not faint or pass out. Id., Ex. B. He was provided with Maalox and simethicone, and was discharged after he felt better. Id. Based upon Stephen's presentation and improvement with the medication provided, Dr. Reyes opined that the episode was related to his gastro-intestinal issues. Reyes Decl., ¶ 5. At Stephen's request, Dr. Reyes renewed his lactulose prescription, and advised Stephen to seek medical attention if his symptoms reoccurred. Id. Stephen did not appear to have any mobility issues during this visit, and he made no request for a bottom bunk chrono. Id. A follow-up visit in 60 days was scheduled. Id.

---

[1] This observation was based on Dr. Reyes' review of notes dated September 23, 2011, prepared by Stephen's last primary care provider, Dr. Hsieh from Solano. Reyes Decl., Ex. A. According to the Dr. Hsieh's notes, Stephen had a laparoscopic-assisted colectomy on July 26, 2010, for severe dysplasia of a colonic mass, with surgical follow-ups in October 2010 and March 2011. On July 25, 2011, another colonoscopy showed that Stephen had another polypoid mass. After a repeat colonoscopy confirmed the location of the polyp, Stephen underwent a second colectomy on August 17, 2011, as discussed herein.

2

The follow-up examination took place on February 2, 2012. Reyes Decl., ¶ 6, Ex. C. Stephen indicated that he was doing "okay." Id. He requested a re-issuance of a bottom bunk chrono that he had received at a previous prison. When Dr. Reyes asked what he believed was the medical indication for the bottom bunk chrono, Stephen replied that it was because of his colon surgery. Id. Dr. Reyes explained that colon surgery was not one of the medical criteria for a bottom bunk chrono; the specific medical criteria for such a chrono included significant mobility impairment due to certain neurological diseases, history of stroke, or severe orthopedic condition, the required use of a Continuous Positive Airway Pressure (CPAP) machine, or a seizure disorder. Id. Dr. Reyes noted that Stephen was "quite functional and has no mobility issues." Id. Because Stephen met none of medical criterion, Dr. Reyes denied the request for a bottom bunk chrono. Id., Ex. D. Stephen also asked for vitamins, specifically Calcium. Because Stephen's last Bone Density Indication on April 21, 2011, showed normal bone mineral density of the lumbar spine and left hip, id., Ex. E, Dr. Reyes determined that Calcium supplements were not medically necessary at that time. Id., Ex. D.

On February 8, 2012, between his second and third visits with Dr. Reyes, Stephen saw Dr. Devers, who is not a party in this action,. Reyes Decl., ¶ 9, Ex. G. The reason for the visit is not clear. Dr. Devers ordered a serum Vitamin D level, the results of which were completely within normal range. Id., Exhs. G & H. Nevertheless, Dr. Devers ordered Calcium and Vitamin D supplements for Stephen although there was no real medical indication. Reyes Decl., ¶ 7. Dr. Devers' notes from the visit indicate that Stephen also requested "[E]nsure, BB, single cell." Id., Ex. G.

On March 14, 2012, Stephen had another routine follow-up visit with Dr. Reyes. Reyes Decl., ¶ 7, Ex. F. At this visit, Stephen complained that he was never given Milk of Megnesia, which had been ordered by Dr. Devers on February 8, 2012; however, Stephen's Medication Reconciliation sheet indicated that it was dispensed on the same day. Id. Stephen stated that although he had been taking lactulose and was not having problems with constipation, he wanted to switch to Milk of Magnesia; he was also using fiber tablets and docusate. Otherwise, Stephen was not having any bowel complaints, no bright red blood per rectum, and no abdominal pain, fever or chills. Stephen also requested that he be taken off some of blood pressure medication;

Dr. Reyes agreed that some modification appeared medically appropriate and adjusted Stephen's medication accordingly. Id. She noted he should have monthly blood pressure checks until his next visit in three months. Id.

Stephen claims that Dr. Reyes acted with deliberate indifference to his medical needs in denying him a bottom bed chrono, Ensure, and Vitamin D and Calcium supplements. Stephen also claims that on June 16, 2012, he was diagnosed with a hernia which Dr. Reyes "overlooked" during her examinations because she used "'Thick' 'Dishwashing' 'Gloves'" which "allow[] No Feeling Abilities." Amended Compl., p. 4.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because the events or omissions giving rise to Stephen's complaint occurred in Marin County, located in the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the

1  record which demonstrate the absence of a genuine issue of material fact. The burden then shifts
2  to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the
3  'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing
4  that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

5  When the parties file cross-motions for summary judgment, the district court must
6  consider all of the evidence submitted in support of both motions to evaluate whether a genuine
7  issue of material fact exists precluding summary judgment for either party. The Fair Housing
8  Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

## DISCUSSION

A.   Eighth Amendment Deliberate Indifference Claims

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. See Farmer, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. Id. "A difference of opinion between a

5

prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Where doctors have chosen one course of action and a prisoner-plaintiff contends that they should have chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, . . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Stephen's claims against Dr. Reyes fail because he fails to show the second subjective prong – that Dr. Reyes was, subjectively, deliberately indifferent to the Stephen's health or safety. See Farmer, 511 U.S. at 834. Assuming that Stephen had a serious medical condition, there is an absence of evidence that Dr. Reyes knew that Stephen faced a substantial risk of harm, and consciously disregarded it by failing to take reasonable steps to abate it. Id. at 837. According to the undisputed evidence, Dr. Reyes saw Stephen for routine, follow-up examinations. During each visit, Dr. Reyes took Stephen's vitals and addressed each of Stephen's complaints. Reyes Decl., Exhs. A, C & F. At the first visit, Dr. Reyes made it a point to review Stephen's medical history, especially his colon surgeries. See supra at 2. Other than constipation, Stephen had no complaints following his blackout on December 6, 2012; Dr. Reyes treated the constipation by renewing Stephen's lactulose prescription as requested. Id. Stephen's claim that Dr. Reyes performed "no tests" to treat his blackout episode and thereby acted with deliberate indifference is factually without merit because the evidence shows that Stephen neither exhibited nor complained of any symptoms which would give notice to Dr. Reyes that more specific treatment was necessary.

Furthermore, Stephen fails to show that Dr. Reyes acted with deliberate indifference when she denied his request for a bottom bunk chrono. She explained to Stephen that medical criteria for a bottom bunk chrono included significant mobility impairment due to certain neurological diseases, history of stroke, or severe orthopedic condition, the required use of a Continuous Positive Airway Pressure (CPAP) machine, or a seizure disorder. Reyes Decl., ¶ 6, Ex. C. The mere fact that Stephen had undergone a colonoscopy was not sufficient to warrant the chrono

without more; as Dr. Reyes observed, Stephen appeared to be "quite functional and has no mobility issues." Id. Stephen argues in opposition that his colon surgery and age make him eligible for bottom bunk accommodation under Chapter 23 of the Division of Correctional Health Care Service manual. Opp., Ex. 2. Dr. Reyes asserts in reply that this Chapter specifically states that a primary care provider is not limited to the criteria listed therein; SQSP has a critical shortage of bottom bunks and therefore requires strict adherence to its own local policy regarding the issuance of bottom bunk chronos. Reply at 4. Because Stephen did not meet any of the objective criteria and also appeared "quite functional and has no mobility issues," Reyes Decl., Ex. C, there was no indication that a bottom bunk was either objectively appropriate under SQSP policy or subjectively necessary by Dr. Reyes's observation. Accordingly, the denial of the bottom bunk chrono was not a result of Dr. Reyes acting with deliberate indifference to a serious medical need.

With respect to the denial of supplements, there was nothing in Stephen's medical file or physical condition to indicate that Calcium supplements were medically necessary. Stephen's last Bone Density Indication on April 21, 2011, showed normal bone mineral density of the lumbar spine and left hip, Reyes Decl., ¶ 6, Ex. D, E. Notwithstanding the fact that a different doctor had previously prescribed them, it cannot be said that Dr. Reyes' differing opinion amounted to deliberate indifference when her decision did not pose an excessive risk of harm to Stephen. Rather, her medical opinion was that prescribing Calcium was not without potential risks to consider, including possible cardiovascular risks in adults. Id.

Stephen's claim that Dr. Reyes improperly denied him Vitamin D is also without merit. She does not recall Stephen specifically requesting Vitamin D, and none of her exam notes indicate that he did. Reyes Decl., ¶ 9, Exhs. A, C & F. The evidence does show that Stephen discussed it with Dr. Devers who ordered a serum Vitamin D level on February 8, 2012, but the results were completely within normal range. Id., Exhs. G & H. Dr. Devers prescribed Vitamin D, just as he did the Calcium supplements, although there was no medical indication. As discussed above, Dr. Reyes's decision not to prescribe the supplements herself was not based on deliberate indifference to Stephen's medical needs because there was no indication that he

7

was Vitamin D deficient; therefore, it cannot be said that there was an excessive risk of harm to Stephen's health without them. Lastly, Stephen's claim that Dr. Reyes denied him Ensure is factually without merit; it appears that he made the request of Dr. Devers, id., Ex. G, but there is no evidence in the record that he made such a request of Dr. Reyes.

Stephen's final claim that Dr. Reyes's acted with deliberate indifference by failing to diagnose his hernia during her examinations is without merit. There is no indication that he complained of symptoms that could be attributed to a hernia during his visits with Dr. Reyes. Stephen asserts generally that she failed to catch the symptoms because she used "dishwashing gloves." Amended Compl., p. 4. However, there is no evidence to show that Dr. Reyes used anything other than the standard medical examination gloves provided to all medical staff. Reyes Decl., ¶ 8.

Ultimately, a difference in opinion between Stephen and Dr. Reyes regarding his treatment does not give rise to a § 1983 claim. See Franklin, 662 F.2d at 1344. Furthermore, to overcome this presumption, Stephen must show that "the course of treatment [Defendant] chose was medically unacceptable under the circumstances" and that she chose "this course in conscious disregard of an excessive risk to [P]laintiff's health." Jackson, 90 F.3d at 332. On the contrary, the evidence shows that Stephen had good mobility and did not suffer from Calcium or Vitamin D deficiency. Furthermore, Stephen did not complain of or exhibit any symptoms indicating a hernia from which an inference could be drawn that a failure to treat would result in an excessive risk of harm to Stephen. Accordingly, it cannot be said that Dr. Reyes consciously disregarded a substantial risk to Stephen's health when she denied him a bottom bunk chrono, Vitamin D and Calcium supplements, or failed to diagnose a hernia. The medical notes and Dr. Reyes's declaration show that her examinations of Stephen were thorough and she cared for each of complaints in an appropriate manner. Stephen's conclusory assertions to the contrary are not sufficient to show that there is a genuine issue as to any material fact.

In opposition and cross-motion for summary judgment, Stephen asserts for the first time that his back was "abnormal" and that he had arthritis which Dr. Reyes ignored and "knowingly disregarded" by prescribing medicine for constipation rather than ordering blood tests. Opp.,

8

p. 6. It lies within the district court's discretion whether to allow a party to raise on summary judgment new arguments that have no basis in the complaint. See <u>Brass v. County of Los Angeles</u>, 328 F.3d 1192, 1197-98 (9th Cir. 2003) (upholding district court's finding that plaintiff waived new § 1983 arguments raised for the first time in his motion for summary judgment where nothing in the counts in the amended complaint suggested he was raising those arguments and he offered no excuse or justification for his failure to raise them earlier). Stephen did not assert such claims in his amended complaint and may not do so now without showing justification for his failure to raise them earlier. Even so, the failure to order blood tests in these circumstances is nothing more than a difference of opinion, and Dr. Reyes' chosen course was not medically unacceptable under the circumstances. Furthermore, Stephen has failed to show that Dr. Reyes chose her course of treatment in conscious disregard of an excessive risk to Stephen's health. See <u>Jackson</u>, 90 F.3d at 332. Accordingly, Dr. Reyes is entitled to summary judgment as a matter of law because there is no genuine issue of material fact precluding judgment against Stephen. See <u>Celotex Corp.</u>, 477 U.S. at 323.

B.   <u>Pending Motions</u>

Stephen's motion for an order to reserve his right to amend his complaint to join defendants who were earlier dismissed from this action in the event summary judgment is granted in favor of defendant (Docket No. 44) is DENIED. Dismissed claims must be brought in a separate action.

Stephen's motion to file a supplemental opposition (Docket No. 47) is DENIED as it is merely an attempt to allege new claims that occurred since the filing of this action. Such incidents may be a basis for a new action, but may not be joined to this matter. Accordingly, Stephen's motion to file further "exhaustion of remedies" in conjunction with his attempt to add claims to this action (Docket No. 48) is DENIED.

Stephen's motion to strike defendant's reply brief as "fraud" upon on this Court (Docket No. 53) is DENIED for failure to show cause. It is unclear from Stephen's motion how Dr. Reyes's reply may be considered fraudulent.

Stephen's motions filed as Docket Numbers 54, 55, 56, 57, 58, 59 and 60 are DENIED

9

as they are attempts to add claims to this action based on incidents that have occurred since the filing of this complaint. New claims against different defendants must be filed as separate actions. Stephen is reminded that he must comply with Federal Rule of Civil Procedure 20(a) when filing a civil action.

Stephen's motion for appointment of counsel (Docket No. 62) is DENIED as this matter has been decided, and no exceptional circumstances warrant appointment. See Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986).

Stephen's motion to consent to magistrate jurisdiction (Docket No. 63) is DENIED as moot.

**CONCLUSION**

For the foregoing reasons, defendant Dr. Reyes's motion for summary judgment is GRANTED (Docket No. 32) and Stephen's cross-motion is DENIED (Docket No. 39). Defendant is entitled to judgment as a matter of law on the merits of the Eight Amendment claim. Judgment will be entered in defendant Reyes's favor and against plaintiff. The clerk will close the file.

This order terminates Docket Nos. 32, 39, 44, 47, 48, 53, 54, 55, 56, 57, 58, 59, 60, 62 and 63.

IT IS SO ORDERED.

Dated: March 5, 2014

_____
SUSAN ILLSTON
United States District Judge